# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| SAFETY DEPOSIT BOX 904 AND ITS CONTENTS, previously taken from U.S. Private Vaults, and now in storage at the FBI | ) ) ) ) ) |

Case No.  2:21-MJ-02403

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

> *See caption above*

located in the Central District of California, there is now concealed *(identify the person or describe the property to be seized):*

> *See Attachment B*

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1956, and 21 U.S.C. §§ 841, 846 | See affidavit |

The application is based on these facts:

> *See attached Affidavit*

> ☒ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
/s Lyndon Versoza
*Applicant's signature*

_____
Postal Inspector Lyndon Versoza
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: _____

_____
*Judge's signature*

City and state: <u>Los Angeles, CA</u>

_____
Hon. Rozella A. Oliver, U.S. Magistrate Judge
*Printed name and title*

AUSA Andrew Brown, x0102, 11th Floor

**ATTACHMENT B**

**I.    ITEMS TO BE SEIZED**

1.    The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. § 1956 (Money Laundering) and 21 U.S.C. §§ 841, 846 (drug trafficking) (the "Target Offenses") namely:

a.    Evidence of wealth, such as cash over $5,000, financial instruments, cryptocurrencies, and documents and records referring or relating to the same;

b.    The safety deposit box itself and packaging or other material inside it which can be forensically tested in an effort to determine who has handled them; and

c.    Records or items containing indicia of ownership or control of a safety deposit box or its contents such as rental agreements or references to specific persons or their contact information.

## AFFIDAVIT

I, Lyndon A. Versoza, being duly sworn, hereby depose and state as follows:

**I.    TRAINING AND EXPERIENCE**

1.    I am a United States Postal Inspector employed by the United States Postal Inspection Service ("USPIS"), Los Angeles Division, in Los Angeles, California, where I have served since June 2005.  Currently, I am responsible for investigating criminal violations of money laundering and structuring laws, such as when the services of the United States Postal Service are employed by criminals as part of the means to launder or conceal illicit funds, and/or avoid banking reporting requirements.  I am also one of seven Postal Inspectors in the U.S. currently designated by USPIS as a Subject Matter Expert ("SME") in money laundering investigations.  As a SME, I have spoken at money laundering conferences and provided training to the financial and banking industry and other law enforcement agents. I have also received both formal and informal money laundering training from USPIS and other government and private agencies.  During my 16-year career as a Postal Inspector, I have investigated: mail thieves, burglars, rapists, murderers, armed robbers, prison and street gangs, drug trafficking organizations, and perpetrators of financial violations

(including money launderers, darknet vendors, digital currency launderers, identity thieves and fraudsters).  For approximately five years prior to investigating money laundering, I was assigned to investigate child exploitation and sex trafficking. In that assignment, I worked both independently and in a task force where I led and participated in investigations related to crimes involving the exploitation of children and sex trafficking domestically and internationally.  In that capacity, I also earned a designation by USPIS as a SME in Child Exploitation Investigations.

2.    From 2002 to 2005, prior to my service as a US Postal Inspector, I served as a law enforcement officer with the US Immigration and Naturalization Service, which later became part of the US Department of Homeland Security.  In this capacity I enforced immigration and customs law at an international airport and seaport, and later, worked in an intelligence unit for local and national counter-terrorism and smuggling operations.

3.    I am familiar with the facts and circumstances described herein.  This affidavit is based upon my personal involvement in this investigation, my training and experience, and information obtained from various law enforcement personnel and witnesses, including information that has been reported to me either directly or indirectly.  This affidavit does not purport to set forth my complete knowledge or understanding of

the facts related to this investigation.

## II.  SUMMARY AND PURPOSE OF AFFIDAVIT: SEARCH WARRANT

4.   This affidavit is made in support of an application for a warrant to search Safety Deposit Box Number 904 (hereinafter "BOX 904"), used by an unknown person or persons, and which was previously seized from U.S. Private Vaults, Inc., for violations of 21 U.S.C. §§ 841 and 846 (drug trafficking) and 1956 (money laundering) (the "Target Offenses").  BOX 904 is currently held in the custody of the FBI in Los Angeles, CA.

Summary

5.   During the execution of a federal seizure warrant for the nests of safety deposit boxes of an indicted safety deposit box company, federal agents inventoried BOX 904, which had no contact or ownership information. Inside BOX 904 contained $914,700 in US currency, this cash was wrapped in pharmacy branded plastic bags.  The cash was isolated and presented to a certified drug detecting police dog who alerted to the odors of an illegal drug.

## III. PROBABLE CAUSE STATMENT

6.   From my role as a case agent in the investigation as well as from speaking with the case agents from the Federal Bureau of Investigation ("FBI") and Drug Enforcement Administration ("DEA") and reading their reports, I know that U.S. Private Vaults is a business in a strip mall that rents

- 3 -

safety deposit boxes anonymously. It is owned and managed by criminals who engage in money laundering, drug trafficking, and structuring, among other offenses. Its business model is designed to appeal to criminals for customers. It charges many times what banks do for similar safety deposit box rentals, but staff conduct countersurveillance for customers, alert them to law enforcement investigations, and structure transactions for them to avoid filing currency reports--in addition to providing them a place to store criminal proceeds anonymously. USPV also launders for its customers cash that is purported to be drug proceeds by converting it into precious metals or wire transfers. The great majority of USPV customers pay cash to rent their safety deposit boxes, at least some of which USPV then deposits into their own bank account, which it uses to pay its operating expenses. By using its customers' criminal proceeds to maintain its own anonymous facility for the storage of criminal proceeds, USPV engages in money laundering.

    7.   I know from reading the indictment that on March 9, 2021, USPV was indicted by a federal grand jury for conspiring with its customers and others to launder money, distribute drugs, and structure financial transactions to avoid currency reporting requirements.  A copy of that indictment is attached and incorporated.

    8.   Beginning on March 22 through March 26, 2021, I, along

with agents from USPIS, FBI and DEA executed federal search and
seizure warrants at USPV which authorized, among other things,
seizing the nests of safety deposit boxes at USPV as evidence and
instrumentalities of the offenses committed by USPV.  The
warrants did not authorize criminal searches of the contents of
the individual boxes but specified that agents would conduct an
inventory of the contents in accordance with their written
procedures, and were authorized to look for contact information
in those individual boxes in order to notify the boxholders of
the seizure so that they could seek the return of their property.
An inventory search was conducted on all the boxes at USPV,
including BOX 904.

A.   BOX 904 description and ownership

     9.   On April 21, 2021, I reviewed FBI documents that
summarized the inventory of BOX 904.  BOX 904 had no contact or
ownership information.

     10.  On April 21, 2021, I spoke with DEA Special Agent
Justin Carlson who told me that he reviewed video from the
inventory of BOX 904.  SA Carlson also sent me still images from
the inventory video.  From my review of these photos and from
speaking with SA Carlson, I determined that BOX 904 is a 10" by
10" plastic box which contained rubber banded bundles of cash
suspiciously wrapped in small paper bags inside plastic pharmacy
bags.  The cash appeared to be un-neatly stacked, which

- 5 -

indicates that the cash was circulated and not freshly withdrawn from a bank. The cash was later counted and totaled to $914,700.

B.   Drug Detecting K9 Alerted to the Cash in BOX 904

11.   On April 21, 2021, I read a declaration from Los Angeles Police Department K9 Officer Dolores Suviate who handles a drug detecting K9, "Smithy." From her declaration I learned that, "Smithy has received over 1013 hours of training, during which time he has successfully found over 3,686 training aids, which consists of actual narcotics. Smithy has been successfully used in over 817 cases in which controlled substances have been found. Smithy is responsible for the seizure of over 177 LBS. of cocaine, 26 LBS. of heroin, 778 LBS of marijuana and 268 LBS of methamphetamine." As a certified k9 in the state of California, Smithy must receive a minimum of 320 hours of training per year, but actually receives more. As part of his yearly certification process, Smithy is subjected to a blind, controlled test in which different types of illegal drugs are hidden in different places in a large training facility. His handler does not know where the drugs are. If Smithy alerts to an area that does not contain drugs, or fails to locate any of the drugs, he would fail and not be certified.

12.   On March 24, 2021, at approximately 12:12 pm, while the search warrant for USPV was being executed, federal agents presented the cash from BOX 904 to Smithy. Officer Suviate said

in her declaration that "Smithy alerted to the presence of scent of narcotics on or in: Contents of Safety Deposit Box 904."

C. <u>TRAINING AND EXPERIENCE ON DRUG TRAFFICKING AND MONEY LAUNDERING</u>

13.  In my training and experience, it is extremely unusual to find hundreds of thousands of dollars in cash.  Even successful and professional drug traffickers and money launderers rarely have so much cash, as it is inherently suspicious, and very difficult to spend; even cash transactions of $10,000 or more generate reporting requirements.  Such a large stash of cash indicates that the unknown box holder is either a top-level drug trafficker or money launderer.  Because a trained narcotics-detecting dog alerted to the currency, it is very likely that s/he is a top-level drug trafficker.  In my training and experience, cash is one of the most closely guarded tools of drug traffickers.  Drug traffickers do not permit someone outside their closest circle of co-conspirators to handle their cash due to the danger of theft and robbery.

IV. **CONCLUSION**

14.  For the reasons stated above, there is also probable cause to believe that evidence and proceeds of the Target Offenses, as described more particularly in Attachment B, are in BOX 904.

- 7 -

Attested to by the applicant in accordance with
the requirements of Fed. R. Crim. P. 4.1 by
telephone on this _____ day of May, 2021.


_____
UNITED STATES MAGISTRATE JUDGE

FILED
CLERK, U.S. DISTRICT COURT

03/09/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: ___DM___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2020 Grand Jury

| UNITED STATES OF AMERICA, | CR 2:21-cr-00106-MCS |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1956(h): Conspiracy to Launder Money; 21 U.S.C. § 846: Conspiracy to Distribute Controlled Substances; 18 U.S.C. 371: Conspiracy to Structure Transactions; 18 U.S.C. § 982(a)(1), 21 U.S.C. §§ 853 and 881(a)(6), 28 U.S.C. § 2461(c) and 31 U.S.C. § 5317(c): Criminal Forfeiture] |
| U.S. PRIVATE VAULTS, INC., California Corporate Number C3405297, | |
| Defendant. | |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 1956(h)]

A.    INTRODUCTORY ALLEGATIONS

     1.    At times relevant to this Indictment:

          a.    Defendant U.S. PRIVATE VAULTS, INC. ("USPV"), a Nevada Corporation registered with the California Secretary of State, was in the business of renting safety deposit boxes to individuals who wished to do so anonymously.

          b.    Co-conspirator USPV Officer was an officer of USPV and

one of its owners.  USPV Officer dealt in marijuana, in violation of the laws of California, as well as cocaine.

       c.   Co-conspirator USPV Manager was the manager of USPV. USPV Manager helped USPV Officer arrange drug deals within USPV, and helped USPV customers avoid detection by law enforcement, including by advising them to structure their cash purchases to avoid reporting requirements.

       d.   Co-conspirator Gold Business was a dealer in precious metals and jewelry, and shared the same space as USPV, as well as some employees.  Gold Business helped USPV customers convert their cash into gold, and structured their cash transactions to avoid federal reporting requirements.

       e.   Co-conspirator USPV Representative One was a representative of USPV, and an owner of co-conspirator Gold Business. USPV Representative One instructed USPV customers how to structure transactions to avoid federal reporting requirements.

       f.   Co-conspirator USPV Representative Two was a representative of USPV, and an owner of co-conspirator Gold Business. USPV Representative Two instructed USPV customers how to structure transactions to avoid federal reporting requirements.

B.   THE OBJECTS OF THE CONSPIRACY

     2.   Beginning in or before 2019, and continuing through the date of this Indictment, in Los Angeles County, within the Central District of California, and elsewhere, defendant USPV conspired with others known and unknown to the Grand Jury to launder money, in violation of Title 18, United States Code, Section 1956, namely:

       a.   to knowingly conduct and attempt to conduct financial transactions involving the proceeds of a specified unlawful activity,

that is, the distribution of controlled substances, with the intent
to promote the carrying on of that specified unlawful activity, in
violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

b.   to knowingly conduct and attempt to conduct financial
transactions involving the proceeds of specified unlawful activity,
that is, the distribution of controlled substances, knowing that the
transactions were designed in whole or in part to conceal and
disguise the nature, location, source, ownership, and control of the
proceeds of specified unlawful activity, in violation of Title 18,
United States Code, Section 1956(a)(1)(B)(i); and

c.   to knowingly conduct and attempt to conduct financial
transactions involving the proceeds of specified unlawful activity,
that is, the distribution of controlled substances, knowing that the
transactions were designed in whole or in part to avoid a transaction
reporting requirement under Federal law, in violation of Title 18,
United States Code, Section 1956(a)(1)(B)(ii).

C.   MANNER AND MEANS OF THE CONSPIRACY

3.   The objects of the conspiracy were carried out and were to
be carried out, in substance, as follows:

a.   Defendant USPV would adopt business practices that
attracted customers in possession of proceeds from criminal offenses,
including drug trafficking, and not law-abiding persons.  Such
practices included: (1) touting the anonymity of the safety deposit
rentals that defendant USPV would provide, including by advertising
"we don't even want to know your name"; (2) boasting that, unlike
banks, its anonymous safety deposit box rentals did not require
customer information that "can be easily accessed by government
agencies (such as the IRS)"; (3) making arrangements for the payment

3

of the rental fees in cash and other ways that would be untraceable;
(4) issuing safety deposit box keys that were unmarked and unnumbered
so that law enforcement could not determine that the keys unlocked
safety deposit boxes at USPV; and (5) charging safety deposit box
rental rates several times higher than those at banks.

b.    USPV Officer would capitalize defendant USPV with the
proceeds of his illegal drug trafficking.

c.    USPV Officer would invite other drug traffickers who
knew and trusted him because of his illegal drug trafficking to store
the proceeds of their drug trafficking at defendant USPV.

d.    Employees of defendant USPV would conduct counter
surveillance of the neighborhood and warn customers when they
observed law enforcement.

e.    Agents of defendant USPV would instruct customers to
structure transactions to avoid currency transaction reports
including by purchasing gold and other precious metals through Gold
Business, which would structure transactions and not file required
currency reports.

f.    If agents of defendant USPV learned that law
enforcement was interested in searching or seizing the contents of a
particular customer's safety deposit box, they would attempt to warn
the customer, delay law enforcement, or even remove all but a nominal
amount of cash from the box for the customer, to prevent law
enforcement from discovering and seizing the bulk of the cash.

g.    Defendant USPV would deposit the cash proceeds it
received from its customers for safety deposit box rentals, which
included proceeds from the distribution of controlled substances,
into its bank account, and then use those proceeds to maintain USPV's

4

anonymous storage facilities for its criminal customers.

       h.   USPV Officer and USPV Manager would negotiate drug deals illegal under California law within the secured space of USPV, and USPV Officer would store the cash proceeds from drug deals within a safety deposit box at USPV.

       i.   USPV Manager would accept cash purportedly from illegal drug sales, and structure transfers of it to Gold Business in amounts not greater than $10,000 at a time in exchange for wire transfers that purported to be for the sale of precious metals.

COUNT TWO

[21 U.S.C. § 846]

4.   The Grand Jury realleges paragraph 1 of this Indictment here.

A.   OBJECTS OF THE CONSPIRACY

5.   Beginning in or before 2019, and continuing through the date of this Indictment, in Los Angeles County, within the Central District of California, and elsewhere, defendant U.S. PRIVATE VAULTS, INC. conspired with others known and unknown to the Grand Jury to distribute controlled substances, including marijuana, a Schedule I controlled substance, and cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), and (b)(1)(D).

B.   MANNER AND MEANS OF THE CONSPIRACY

6.   The objects of the conspiracy were carried out, and to be carried out, as described in paragraph 3 of this Indictment, which the Grand Jury realleges here.

C.   OVERT ACTS

7.   In furtherance of the conspiracy and to accomplish the objects of the conspiracy, on or about the following dates, defendant USPV, acting through its officers and managers, committed various overt acts within the Central District of California, including but not limited to the following:

Overt Act No. 1:   On June 28, 2019, USPV Manager distributed within USPV's business location six different butane hash oil vape cartridges containing THC to someone he believed to be a drug trafficker, but who was, in fact, a confidential informant working with law enforcement ("Confidential Informant 3"), as samples of what

defendant USPV could provide in bulk.

Overt Act No. 2: On July 26, 2019, USPV Officer met Confidential Informant 3 within USPV to sell him 1,000 vape cartridges containing THC.  USPV Officer delivered the cartridges in the parking lot of USPV, and received in exchange $8,000 in cash within USPV's business location.

Overt Act No. 3:  On or about December 11, 2019, during discussions for the sale of cocaine, USPV Officer instructed the buyer, Confidential Informant 3, to use a wireless communication application called "Signal," which is encrypted to communicate with him regarding the transaction.

Overt Act No. 4:  On or about December 16, 2019, USPV Officer instructed Confidential Informant 3 to come to USPV to complete the exchange.

Overt Act No. 5:  On or about December 16, 2019, USPV Manager called Confidential Informant 3 and explained that co-conspirator USPV Officer was not being careful enough, and could bring unwanted law enforcement attention to defendant USPV by conducting this drug deal onsite.

Overt Act No. 6:  On or about December 18, 2019, USPV Officer sold an ounce of cocaine to Confidential Informant 3 through intermediaries.

                              COUNT THREE

                          [18 U.S.C. § 371]

     8.   The Grand Jury realleges paragraph 1 of this Indictment
here.

A.   OBJECTS OF THE CONSPIRACY

     9.   Beginning in or before 2019, and continuing through the
date of this Indictment, in Los Angeles County, within the Central
District of California, and elsewhere, defendant U.S. PRIVATE VAULTS,
INC. conspired with others known and unknown to the Grand Jury to
knowingly and for the purpose of evading the reporting requirements
of Section 5331 of Title 31, United States Code, and the regulations
promulgated thereunder: (1) cause and attempt to cause a nonfinancial
trade or business to fail to file a report required under Section
5331 of Title 31, and any regulation prescribed under any such
Section, in violation of Title 31, United States Code, Section
5324(b)(1); and (2) structure, assist in structuring, and attempt to
structure and assist in structuring, transactions with one or more
nonfinancial trades or businesses, in violation of Title 31, United
States Code, Section 5324(b)(3).

B.   MANNER AND MEANS OF THE CONSPIRACY

     10.  The objects of the conspiracy were carried out, and to be
carried out, as described in paragraph 3 of this Indictment, which
the Grand Jury realleges here.

C.   OVERT ACTS

     11.  In furtherance of the conspiracy and to accomplish the
objects of the conspiracy, on or about the following dates, defendant
USPV, acting through its officers and managers, committed various
overt acts within the Central District of California, including but

                                    8

not limited to the following:

Overt Act No. 1:  On December 4, 2019, Gold Business sold jewelry for $11,900 in cash to a customer of USPV who was also a confidential informant working with law enforcement ("Confidential Informant 1"), and did not file the required IRS Form 8300.

Overt Act No. 2:  On January 13, 2020, USPV Representative One told a customer of USPV who was also a confidential informant working with law enforcement ("Confidential Informant 4"), and who expressed an interest in buying $20,000 worth of precious metals in cash, to purchase only $10,000 at a time to avoid paperwork.

Overt Act No. 3:  On January 28, 2020, USPV Representative Two told a DEA agent who was posing as a USPV customer and said he wanted to purchase $18,000 in gold, "I recommend you stay under $10,000 in cash and then you could just do some one day, and a few days later you could do the other," and explained, "If you buy less than $10,000 then there's no form."

Overt Act No. 4:  On January 29, 2020, USPV Manager instructed Confidential Informant 3, who wanted to buy gold to pay a "skante" debt "down south," meaning a debt in Mexico for methamphetamine, to keep his purchases under $10,000 each:  "That way you don't have to give no social security, no ID. All that shit goes to the IRS."  USPV Manager introduced Confidential Informant 3 to co-conspirator USPV Representative One to purchase the gold.

Overt Act No. 5:  On January 29, 2020, USPV Representative One explained to Confidential Informant 3 and his friend, who was actually an undercover police officer ("Undercover Officer"), that it was better to space out his cash purchases and keep each one under

9

$10,000: "Don't come in every day. . . . what they look for is a pattern of someone who with intention is trying to get around . . ."

Overt Act No. 6: On January 29, 2020, when Undercover Officer explained that he needed more than $10,000 worth of gold quickly, USPV Manager suggested that he split the purchase between himself and Confidential Informant 3, so that each purchase would be under $10,000 individually. USPV Representative One agreed to the ruse "as long as you hand me the money" separately and fill out receipts for two separate transactions. USPV Representative One also agreed that Undercover Officer could pick up the total gold purchase alone the following day.

Overt Act No. 7: On January 29, 2020, USPV Representative One accepted first $9,900 in cash from Undercover Officer and then another $5,000 which Undercover Officer handed to Confidential Informant 3, who then handed it to USPV Representative One.

Overt Act No. 8: On January 30, 2020, USPV Representative One delivered nine ounces of gold bullion to Undercover Officer.

Overt Act No. 9: On November 17, 2020, USPV Manager accepted $25,000 in cash from Confidential Informant 3, who said it was from the sale of "skante" (methamphetamine), and structured the transfer of it to Gold Business in exchange for wire transfers of $10,000 and $12,000, purportedly from the sale of gold, to launder the cash.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 982(a)(1)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given to defendant U.S. PRIVATE VAULTS, INC. that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 982(a)(1), in the event of defendant USPV's conviction under Count One of this Indictment.

2.    Defendant USPV shall forfeit to the United States the following property:

a.    All right, title, and interest in any and all property, real or personal, involved in or traceable to any transaction set forth in Count One of this Indictment, including, without limitation the property set forth in paragraph 3 below; and

b.    A sum of money equal to the total value of the property described in subparagraph a above.

3.    The Grand Jury finds probable cause to believe that the following property, located at U.S. PRIVATE VAULTS, INC., 9182 WEST OLYMPIC BLVD., BEVERLY HILLS, CA 90212, is subject to forfeiture on the grounds set forth in paragraph 2 above:

a.    The business computers;

b.    The money counters;

c.    The nests of safety deposit boxes and keys;

d.    The digital and video surveillance and security equipment; and

e.    The biometric scanners.

4.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b),

11

defendant USPV shall forfeit substitute property, up to the value of the property described in paragraph 2 above if, as the result of any act or omission of defendant USPV, the property described in paragraph 2 above or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[21 U.S.C. § 881(a)(6), 28 U.S.C. § 2461(c)

and 21 U.S.C. § 853]

1.   Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to defendant U.S. PRIVATE VAULTS, INC. that the United States will seek forfeiture as part of any sentence in accordance with Title 21, United States Code, Section 881(a)(6), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853, in the event of defendant USPV's conviction under Count Two of this Indictment.

2.   Defendant USPV shall forfeit to the United States the following property:

a.   All right, title, and interest in any and all property, real or personal:

i.   constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense set forth in Count Two of this Indictment, including, without limitation, the property set forth in paragraph 3 below; or

ii.   used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the offense set forth in Count Two of this Indictment, including, without limitation, the property set forth in paragraph 3 below; and

b.   A sum of money equal to the total value of the property described in subparagraph a above.

///

3.    The Grand Jury finds probable cause to believe that the following property, located at U.S. PRIVATE VAULTS, INC., 9182 WEST OLYMPIC BLVD., BEVERLY HILLS, CA 90212, is subject to forfeiture on one or more of the grounds set forth in paragraph 2 above:

a.    The business computers;

b.    The money counters;

c.    The nests of safety deposit boxes and keys;

d.    The digital and video surveillance and security equipment; and

e.    The biometric scanners.

4.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendant USPV shall forfeit substitute property, up to the value of the property described in paragraph 2 above if, as the result of any act or omission of defendant USPV, the property described in paragraph 2 above or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

                    FORFEITURE ALLEGATION THREE

            [31 U.S.C. § 5317(c) and 28 U.S.C. § 2461(c)]

     1.   Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to defendant U.S. PRIVATE VAULTS, INC. that the United States will seek forfeiture as part of any sentence in accordance with Title 31, United States Code, Section 5317(c), and Title 28, United States Code, Section 2461(c), in the event of defendant USPV's conviction under Count Three of this Indictment.

     2.   Defendant USPV shall forfeit to the United States the following property:

          a.   All right, title, and interest in any and all property, real or personal, involved in or traceable to the offense set forth in Count Three of this Indictment, including, without limitation, the property set forth in paragraph 3 below; and

          b.   A sum of money equal to the total value of the property described in subparagraph a above.

     3.   The Grand Jury finds probable cause to believe that the following property, located at U.S. PRIVATE VAULTS, INC., 9182 WEST OLYMPIC BLVD., BEVERLY HILLS, CA 90212, is subject to forfeiture on the grounds set forth in paragraph 2 above:

          a.   The business computers;

          b.   The money counters;

          c.   The nests of safety deposit boxes and keys;

          d.   The digital and video surveillance and security equipment; and

          e.   The biometric scanners

     4.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 31, United States Code, Section

                                    15

5317(c)(1)(B), and Title 28, United States Code, Section 2461(c), defendant USPV shall forfeit substitute property, up to the value of the property described in paragraph 2 above if, as the result of any act or omission of defendant USPV, the property described in paragraph 2 above or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/S/

Foreperson

TRACY L. WILKISON
Acting United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

ANDREW BROWN
Assistant United States Attorney
Major Frauds Section

16

1   Your Affiant, Officer Dolores Suviate, Serial #35376, has been employed by the Los Angeles

2   Police Department since June of 1999.  Your Affiant has received formal training in the area of

3   narcotics and dangerous drugs at the Los Angeles Police Academy.  This training concentrated

4   on identifying methods of narcotics manufacturing, packaging, sales and use as well as the

5   appearance and effects of narcotics and dangerous drugs. Your Affiant has attended numerous

6   classes, seminars, training lectures and on the job training in the field of narcotics given by

7   other narcotic experts.  In July of 2000, your Affiant was assigned to the Juvenile Narcotics

8   School Buy Program.  During this time, your Affiant purchased marijuana and ecstasy in an

9   undercover capacity.  In 2001 your Affiant was assigned to the Juvenile Complaint Detail.  In an

10  undercover capacity, your Affiant purchased marijuana from the residences of several narcotic

11  dealers.  In 2002, your Affiant worked patrol at Central Division.  At this division, your Affiant

12  made numerous arrest for narcotic possession and sales. Your Affiant has been assigned to

13  Gang and Narcotics Division since October of 2003 and is currently assigned to the K-9 unit.

14   While assigned to the division, your Affiant worked the City Wide Buy Team as an undercover

15  buy officer. For two years your Affiant, in an undercover capacity, purchased narcotics including

16  cocaine, heroin, methamphetamine and marijuana from narcotic street dealers.  In November

17  of 2003, your Affiant attended Narcotics School.  This was a five day school consisting of various

18  topics including the identification and packaging of illegal substances.   Your affiant is an LAPD

19  narcotic expert and has testified in both Municipal and Superior Courts in and for the County of

20  Los Angeles, as an expert in the field of identification, packaging and sales of narcotics.

21      In May of 2015, your Affiant was assigned to the K-9 unit.  On June 1, 2015 your Affiant

22  assumed the responsibility of training and handling a narcotics detection dog named "Smithy"

23  K9-250.  "Smithy" was first certified on January 14, 2013 and placed into service on January 15,

24  2013. "Smithy" alerts upon detecting the odor of the drugs marijuana, cocaine, heroin, and

25  methamphetamine.  His alerts consist of both physical and behavioral reactions which

26  include a heightened emotional state in which he focuses on the source of the odor.  "Smithy"

27  becomes very possessive of the area in which he detects the narcotic odors for which he is

28  trained. "Smithy" will positively alert his handler to the scent of heroin, cocaine, marijuana and

29  methamphetamine. The Los Angeles Police Department and the National Police Canine

30  Association have certified "Smithy" and your Affiant as a team for use on July 8, 2015,

31  January 4, 2016, January 9, 2017, January 9, 2018, January 8, 2019, May 27, 2020 and

32  November 19, 2020.  They were also certified with the California Narcotic Canine Association

33  On November 18, 2018 and September 23, 2019.  "Smithy" has received over (1013) hours of

34  training, during which time he has successfully found over (3686) training aids, which consists

35  of actual narcotics. Smithy has been successfully used in over (817) cases in which controlled

36  substances have been found. Smithy is responsible for the seizure of over (177 LBS.) of cocaine,

37  (26 LBS.) of heroin, (778 LBS.) of marijuana and (268 LBS.) of methamphetamine.

38

39       On March 24, 2021, your Affiant responded to a request for a narcotic detection K9 at

40  9182 W. Olympic Boulevard, Beverly Hills, CA 90212.  At approximately 11:58 AM, "Smithy"

41   alerted to the presence of scent of narcotics on or in:

42

43  Contents of Safety Deposit Box 904

44

45  I declare under penalty of perjury that the above information is true and correct.  Executed at

46  12:12 PM on the 24th of March in Los Angeles County.

47

48

49

50

51                                    Officer Dolores Suviate #35376

52

53